IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FOREMOST INSURANCE COMPANY,   )
                              )
          PLAINTIFF,          )
                              )
v.                            )   CASE NO. 2:10-cv-724-MEF
                              )
EMILY RUDOLPH, *et al.*,      )
                              )
          DEFENDANTS.         )

## MEMORANDUM OPINION AND ORDER

Foremost Insurance Company ("Foremost"), a property insurance company, brings

this action seeking a declaration that a property owner's policy it issued is void and that no

monies are owed under the policy.  Foremost sues its policy owner, Emily Rudolph ("Emily")

and her mother Cynthia Rudolph ("Cynthia") (collectively referred to as "Defendants").  The

cause is now before the Court on the Motion for Summary Judgment by Foremost Insurance

Company (Doc. # 16).  For the reasons set forth below, the Court finds that the motion is due

to be GRANTED.

## JURISDICTION AND VENUE

Subject matter jurisdiction over Foremost's claims is proper under 28 U.S.C. § 1332

(diversity).  The parties do not contest personal jurisdiction or venue, and the Court finds

adequate allegations in support of both personal jurisdiction and venue.

**STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56(a), "a party may move for summary judgment, identifying each claim or defense — or the part of each claim of defense — on which summary judgment is sought."  A court presented with such a motion must grant it "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A genuine dispute as to a material fact can only be found "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  According to the Supreme Court, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quotation omitted).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

After the movant satisfies this requirement, the burden shifts to "the adverse party [who] must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quotation omitted).  "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48.  The non-moving party "must do

more than simply show that there is some metaphysical doubt as to the material facts."
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The Eleventh
Circuit Court of Appeals has held that "[a]ll reasonable inferences arising from the
undisputed facts should be made in favor of the nonmovant, but an inference based on
speculation and conjecture is not reasonable." *Blackston v. Shook & Fletcher Insulation Co.,*
764 F.2d 1480, 1482 (11th Cir. 1985) (citation omitted).

While it would make this court's job considerably easier if it could simply grant
summary judgment on every claim that a party fails to address in opposing a motion for
summary judgment or at least when a party fails to respond at all to a motion, the law of this
Circuit does not allow such an approach.  *See, e.g., Trustees of Cent. Pension Fund of Int'l
Union of Operating Eng'rs & Participating Employers v. Wolf Crane Serv., Inc.,* 374 F.3d
1035, 1039-40 (11th Cir. 2004); *United States v. One Piece of Property, 5800 S.W. 4th Ave.,
Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004).  A court cannot base the entry of
summary judgment on the mere fact that the motion was unopposed but, rather, must
consider the merits of the motion, nor can a court deem a claim abandoned by a party absent
some affirmative indication that he no longer wishes to pursue that claim.  *Id.*  This approach
is consistent with the language of the Federal Rules of Civil Procedure.  Rule 56(c)
establishes procedures for supporting factual positions made in the context of a request for
summary judgment.  Fed. R. Civ. P. 56(c).  Rule 56(e) explains that when a party "fails to
properly address another party's assertion of fact as required by Rule 56(c)," the court may

consider the fact undisputed and grant the summary judgment "if the motion and supporting

materials – including facts considered undisputed – show that the movant is entitled to it."

Fed. R. Civ. P. 56(e)(2) & (3).  Thus, a court must always decide the motion on the basis of

whether the movant is entitled to the relief sought and not simply because the nonmovant

opposed the motion.

## FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted

in support of the motion.  Defendants elected not to file any evidence of any sort in

opposition to the Foremost's submissions.  Thus, the evidentiary submissions of Foremost

will be viewed in the light most favorable to Defendants, the non-moving parties, but the

Court will consider the facts set forth in Foremost's evidentiary submissions to be undisputed

unless the submissions themselves reveal a conflict as to a fact.

In May of 2010, Cynthia lived in a 1996 Fleetwood mobile home located in Lowndes

County, Alabama near Highway 80.  Cynthia lived with four of her eight children: Emily

(age 19), Karmen Rudolph (age 18), Jacora Brown (16), and Fantavia Brown (14).  Emily's

two daughters, Alivia (age 4 months) and Alkera (age 2), also lived in the mobile home.

Cynthia earned some income from gambling either with her own money or with other

people's money.[1]  She earned about $10,000 from gambling in the year before preceding May

---

[1]  In 2007, Cynthia hit a $1,000,000 jackpot while gambling.  She purchased cars, a
boat, an excavator, her concession, new televisions and appliances and her concession stand
before a man with whom she had been romantically involved disappeared with $800,000 of
the money.  Cynthia did not file an income tax return for 2007, nor did she pay income taxes

of 2010.  She also sold food such as hamburgers and chicken strips from an unlicensed concession stand near the mobile home.  She earned about $400 a month doing so.  Cynthia's friends Rick Graham ("Graham") and Roosevelt Williams ("Williams") financially assisted Cynthia and her family.  In fact, Graham gave Cynthia and her daughters the mobile home in which they lived.[2]  As of May of 2010, Cynthia had outstanding federal tax liens against her for $18,213 for 2004; $29,496 for 2003; and $2,120 for 1998.

Emily has never been employed.  She received only $358 a month in food stamps.  In 2010, she had several outstanding debts which were in the collection process.  The total sum owed on these debts exceeded $14,000.

For several months, Emily did not have insurance on the mobile home.  When Emily's younger sister Karmen started a job as a Census Worker, Emily decided to obtain insurance on the mobile home.  On April 12, 2010,  Emily called Foremost to obtain insurance on the mobile home.  Foremost took her application and payment over the phone.  Emily asked when the policy would be effective.  The Foremost representative told her that it could be

---

on the jackpot.  The IRS is pursuing her for taxes she should have paid on her winnings in 2007.

[2]  There is some conflict in the testimony about legal title to the mobile home.  Emily testified that the title for the mobile home was in her name jointly with Graham.  Cynthia seemed to indicate that it was in the name of Emily alone Emily and her sisters, but that Graham intended the mobile home to be used by Cynthia and her daughters.  There is also some conflicting information in the record about the ownership of the land on which the mobile home was located.  Emily claims Graham gave it to her along with the mobile home.  Graham indicates that he continues to own the land but did not charge Cynthia and her children to reside in the mobile home on his land.

effective that day if the payment was made over the phone.  Emily and Karmen arranged for

the initial payment to be taken out of Karmen's bank account.

Foremost issued a policy providing insurance of $80,000 on the mobile home, $43,000

for personal property within the home, and $15,000 for other structures.  Foremost has

identified several policy provisions that are key to the resolution of this motion.  Those

provisions are as follows:

> **SECTION 1 - Insured Perils**
> We insure risk of direct, sudden and accidental physical loss to the property
> described in Coverage A - Dwelling, Coverage B - Other Structures and
> Coverage C - Personal Property unless the loss is excluded elsewhere in this
> policy.
>
> **SECTION 1 - Exclusions**
> We do not insure loss caused directly or indirectly by any of the following.
> Such loss is excluded regardless of any other cause or event contributing
> concurrently or in any sequence to the loss.
> 1.  Loss intentionally caused by any of you or performed at your direction.
> *****
>
> **Policy Conditions**
> **1. Insurable Interest, Amount of Insurance and Limits of Liability.**
> Regardless of the number of people or organizations who have an interest in
> the insured property, we will not be liable in any one loss for more than the
> lesser of:
> a.  The interest of a person or organization insured.
> B.  The applicable Amount of Insurance.
> *****
>
> **c.  Concealment or Fraud.**  The entire policy will be void if any of you:
> a.  Intentionally conceal or misrepresent any material fact or circumstance;
> b. Engage in fraudulent conduct;
> c. Make false statements;
> whether before or after a loss or claim relating to this insurance.

Doc. 18 at Ex. A- 1.

On the afternoon of May 11, 2010, the mobile home burned.  At the time of the fire,

the mobile home was unoccupied.  Cynthia was nearby at the concession stand.  Two of Emily's younger sisters had come home from school and taken Emily's children on a walk to a nearby store.  Emily put a load of clothes into the dryer.  Rather than going to her mother's nearby concession stand, Emily decided to drive to the White Hall Triple Spot Restaurant, which was located five or ten miles away, to pick up a cheese hamburger.  When Emily left, she made sure she locked the mobile home.

A relative of hers, Tracy Smith ("Smith") was working on the brakes of his car nearby, and she told him she was going to get some food.  After Emily left the mobile home, Smith did not see anyone enter or leave the mobile.  Smith heard a smoke alarm sounding inside the mobile home.  He looked into the mobile home and saw fire.  He tried to extinguish the fire by breaking out a window and spraying water from a hose.  He also called 911.  A man who was passing by stopped to help Smith try to stop the fire.  The fire department arrived and extinguished the flames.  The mobile home was rendered a total loss.

When Emily returned from picking up her cheese burger, she saw the fire department, ambulance, and many cars near her mobile home. She realized her mobile home was on fire. It is not clear who contacted Foremost to report the fire and make a claim, but it is clear that someone informed Foremost about the fire and that both Cynthia and Emily had dealings with Foremost relating to the insurance claim for the loss of the mobile home and its contents.  Both Emily and Cynthia indicated that they did not know how the fire had started.

Foremost issued a number of checks to Emily to pay the family's emergency living

expenses after the fire.  Foremost also began to investigate the cause and origin of the fire.

It hired Troy Ammons ("Ammons"), a Certified Fire Investigator to examine the remains of

the mobile home and determine, if possible, the cause and origin of the fire.

On May 14, 2010, Ammons examined the remains of the mobile home.  He prepared

a summary of his initial findings on May 19, 2010 and provided them to Foremost.  Once

Foremost received the initial findings from Ammons, it wrote to Emily to advise her that

there was a potential problem with coverage of her loss because there was evidence that the

fire was intentionally set.  Foremost advised that it would continue its investigation before

making a final coverage determination.  Foremost also directed Ammons to prepare a

complete report which was not finished until August of 2010.

Ammons found irregular patterns of burning on the floor in the dining room and the

laundry room with a small area of burning on the kitchen floor near the den.  The areas of

these burned areas showed burn patterns that were all consistent with a fire caused by the

burning of an ignitable liquid.  Ammons examined the electrical service entrance components

and determined they were not in the area of the burning and did not cause the fire.  He

examined the branch circuit electrical wiring system and found that most of it was

undamaged by the fire.  He eliminated wiring as a possible cause of the fire.  He checked

appliances like the furnace, freezers, and the dryer.  Based on the fire patterns and burn

marks he eliminated them as possible causes of the fire.  Ammons ruled out lightning as a

cause of the fire.  Ammons concluded based on his investigation of the scene that the fire was

intentionally set and that it was caused by burning of an ignitable liquid in three separate areas.

On August 26, 2010, Foremost filed this declaratory judgment action against Emily and Cynthia.  In this action, Foremost alleges that arson caused the fire at the mobile home and that the terms of the insurance policy and Alabama law relieve it from any liability under the policy.  It asks for a declaration that no payments are due under the insurance policy because either Emily or Cynthia caused the fire to be set or directed someone to cause the fire to be set.  It also asks that for a declaration that the policy is void because the defendants intentionally misrepresented to Foremost that they did not play any part in causing the fire.  This cause is now before the Court on a motion for summary judgment Foremost filed.

## DISCUSSION

Foremost advances two bases for its claim that no monies are owed to Cynthia or Emily under the policy.  First, Foremost claims that Emily or Cynthia are guilty of setting the fire which caused the loss of the insured mobile home and its contents and consequently, the loss is excluded from coverage under the explicit terms of the policy exclusions.  Second, Foremost contends that Emily and Cynthia made intentional fraudulent misrepresentations about the cause of the fire as part of the insurance claim and that the plain language of the policy and an Alabama statute provide that in such a circumstance the policy may be declared void.  The Court will discuss each of these bases in turn.

**A.  Arson as a Defense to Payment of Insurance Proceeds**

It is undisputed that the insurance policy at issue explicitly provides that Foremost

need not pay a claim under the policy where the insured intentionally caused the loss.

Alabama law allows an insurer to establish that policy proceeds should not be paid to an

insured because the insured committed arson by showing (1) arson by someone; (2) motive

on the part of the insured; and (3) evidence implicating the insured.  *S&W Props., Inc. v.*

*American Motors Ins. Co.*, 668 So. 2d 529, 532 (Ala. 1995).   Because Foremost has

established through undisputed evidence each of these three elements, it is entitled to

judgment as a matter of law.  The undisputed evidence regarding the cause and origin of the

fire establishes that the fire  was intentionally set and that it was caused by burning of an

ignitable liquid in three separate areas.   Emily and her family faced serious financial

problems, but owed nothing on the mobile home.  This financial need and opportunity to

profit by collecting the insurance proceeds constitutes ample evidence of motive.  Finally,

the undisputed evidence implicates Emily as the person who intentionally set the fire which

caused the loss.  Emily secured the insurance policy a short time before the fire which caused

the loss.   Emily was the only person with access to the scene during the period immediately

preceding the fire.  None of the seven people who lived in the mobile home were in it at the

time of the discovery of the fire.  The Court is satisfied that Foremost has established that the

undisputed facts support judgment in its favor as a matter of law as to its contention that it

need not provide coverage for this intentionally set fire.  In light of this finding, the Court

need not address the alternative basis on which Foremost seeks judgment as a matter of law.[3]

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1. The Motion for Summary Judgment by Foremost Insurance Company (Doc. # 16) is GRANTED.

2. All deadlines and hearings set in this case are CANCELLED.

3. A separate final judgment will be entered consistent with this Memorandum Opinion and Order.

DONE this the 9th day of May, 2011.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Were this Court to fully address the contention that Emily's misrepresentations to Foremost during the claims process after the fire which caused the law, the Court would be inclined to find that under the policy language and § 27-14-28 of the Code of Alabama (1975), Foremost has established that it is also entitled to judgment as a matter of law on this basis as well. The undisputed evidence establishes that Emily made material misrepresentations to Foremost after the loss regarding the cause and origin of the fire.